**STATE of Iowa, Appellee,**

v.

**Dale Eugene ROYER, Appellant.**

No. 87–848.

Supreme Court of Iowa.

Feb. 22, 1989.

Rehearing Denied March 16, 1989.

Raymond E. Rogers, Acting Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., Mary E. Richards, County Atty., and Douglas R. Marek, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, CARTER and ANDREASEN, JJ.

SCHULTZ, Justice.

Defendant Dale Eugene Royer was convicted, following a jury trial, of two counts of first-degree murder and one count of first-degree arson. The defendant urges that the trial court erred in failing to include, for jury deliberation, lesser-included offense instructions requested for each of the three counts. After the court of appeals affirmed the convictions, we granted defendant's application for further review. Defendant now maintains that our recent decision of *State v. Jeffries*, 430 N.W.2d 728 (Iowa 1988), is applicable to his case and supports his contention that the trial court erred in failing to submit the requested lesser-included offenses.

From the record, the jury could have found the following facts. The defendant was a teaching assistant and a graduate student at Iowa State University from 1983 until the end of 1985, when he dropped out of school. He returned to his farm home near Coon Rapids in May, 1986, to assist his father, who had been injured in an accident. Prior to leaving the University, he was involved in a long-term dispute with one of his professors, Deepinder Sidhu.

On the night of December 1, 1986, a fire consumed Professor Sidhu's home. Two of the professor's sons died in the fire of smoke inhalation. The State Fire Marshall's office determined that the fire had been intentionally set. Pry marks were found on the front door. The living room carpet had diesel fuel on it. The investigator opined two gallons of fuel had been poured onto the carpet. The telephone line to the house had also been cut.

Evidence linked the defendant to the crime. A car similar to his was seen in front of the professor's home at about 1:00 a.m. The police seized a four-gallon sprayer containing diesel fuel and a pry bar from defendant's home. His car smelled of diesel fuel and the seat had a ring on it which matched the bottom of the spray can. Defendant told a neighbor friend that he had

gone to Sidhu's house in Ames with "a bar" and "a can," cut the telephone line and pried open a door.

The defendant was tried on charges of one count of arson in the first degree, Iowa Code § 712.2,[1] and two counts of first-degree murder. Iowa Code § 707.2(2). Defendant filed a notice of his intent to rely on the defense of diminished responsibility or insanity. At trial, defendant presented extensive evidence concerning his mental health, including a psychiatrist's evaluation which had diagnosed the defendant as a paranoid schizophrenic. The trial court instructed the jury on the insanity defense and submitted it as a defense on all three counts. However, the court refused to instruct the jury that they might return verdicts on the lesser-included offenses requested. Specifically, defendant requested instructions on involuntary manslaughter, Iowa Code § 707.5, under the murder counts and arson in the second degree, Iowa Code § 712.3, or reckless use of fire, Iowa Code § 712.5, under the arson count. The jury rejected the insanity defense and found defendant guilty on all three counts. The court sentenced defendant to the statutory term for each count.

Defendant's appeal advances the same troublesome issue of lesser-included offenses that we attempted to put to rest in *Jeffries.* Prior to *Jeffries,* our approach involved a two-part test.

> The legal or element test requires the lesser offense to be composed solely of some but not all of the elements of the greater offenses. Thus the lesser offense is necessarily included in the greater offense if the greater offense cannot be committed without also committing the lesser. Conversely, if the lesser offense contains an element that is not part of the greater offense, the lesser cannot be included in the greater.
>
> The factual test requires the court to determine whether there is a sufficient factual basis in the record for submitting the included offense.

*State v. Lampman,* 345 N.W.2d 142, 143 (Iowa 1984) (citations omitted). The legal test presents a rather straightforward application of matching elements or turning to a statutory mandate which declares the offense is a lesser-included offense under another criminal charge. However, in a recent review, we found that the standard by which we judge the sufficiency of the evidence for the factual test was less clear than the legal test. *State v. Mount,* 422 N.W.2d 497, 500–01 (Iowa 1988). We noted that even when the State's evidence is undisputed, it "does not elevate it to a verity." *Id.* at 501. A jury may reject the State's evidence which would elevate the crime to a higher offense. *Id.* We stated the factual test is not met "unless a reasonable person viewing the evidence could *only* conclude that the major offense, or no offense, has been committed." *Id.* In *Jeffries,* we spoke to the court function theory in applying the factual test as follows:

> The trial court evaluates the record and determines whether such a fact question is generated. Such evidence may come from either the State or the defendant.... Under the court function theory, when an alibi or insanity defense is used or the defendant presents no defense at all, a lesser-included offense is precluded, provided that no evidence appears in the record to controvert the elevating element in any way.

430 N.W.2d at 733 (citations omitted). We discontinued the use of the factual test in *Jeffries,* with two exceptions, stating:

> [W]e hold that Iowa trial courts shall no longer be required to review the record to determine whether there is sufficient evidence to support a verdict for a lesser-included offense. Except in two instances, they shall automatically instruct on a lesser-included offense if the legal test is met as to a greater offense that has support in the evidence.
>
> One exception to the automatic instruction rule is when the defendant stipulates to the dissimilar element of the greater offense....
>
> The other exception involves lesser-included offenses that do not meet our

---

1. All Iowa Code references relate to the 1985 Code.

legal test but are made lesser-included offenses by statute.

*Jeffries*, 430 N.W.2d at 737.

The Court of Appeals passed on this case prior to our ruling in *Jeffries*, and relied upon the two-part test applicable at the time. It affirmed the trial court, holding that both arson in the second degree and reckless use of fire met the legal test as lesser-included offenses of arson in the first degree, but did not satisfy the factual test. It also held that involuntary manslaughter is an included offense of murder in the first degree by statute, thus meeting the legal test, but the factual test similarly was not met in this case. In light of our recent *Jeffries* decision, we must review this case again.

**I. *Applicability of Jeffries*.** The parties disagree on whether the application of the lesser-included offense analysis announced in *Jeffries* would be a retroactive application in this case. Defendant urges that *Jeffries* is not a clear break with past precedent, but merely clarifies the circumstances under which the trial court should submit lesser-included offenses. Thus, the type of concerns that have traditionally led courts to analyze whether a new doctrine should be applied retroactively are not present. He urges that we simply apply our *Jeffries* approach.

The State, on the other hand, asserts that because the rule in *Jeffries* did not exist when defendant was tried, our application of this rule now would be retroactive. The State asserts that the new rule should be nonretroactive, relying on the application of certain criteria originally announced in United States Supreme Court decisions and which we approved in *State v. Monroe*, 236 N.W.2d 24, 38 (Iowa 1975). These three factors are: (1) the purpose of the new standard; (2) the reliance placed upon prior decisions on the subject; and (3) the effect which retroactive application

would have upon the administration of justice. *Id.* The State urges that the rationale for the new approach announced in *Jeffries* was the ease of application and consistency with existing rules, not because the old method impaired the truth-finding function or raised questions about the accuracy of past guilty verdicts. It further claims that the State relied on the old method in its prosecution and it would be burdensome to retry all cases then on direct appeal.

The problem with the State's argument is three-fold. First, in *Jeffries*, we noted that if only the greater offense is submitted to the jury, although reasonable doubt exists as to the greater offense, a jury may convict because the evidence shows the defendant was guilty of *some* offense. 430 N.W.2d at 735. We also found that this problem may raise due process concerns. *Id.* Therefore, the purpose of the *Jeffries* rule does, at least in part, relate to the truth-finding function of the court.

Second, the United States Supreme Court has recently decided the last two factors are insufficient reasons to disallow retrospective application. *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649, 661 (1987). The court has decided the better rule is to apply new decisions which concern the conduct of criminal prosecutions retrospectively to all cases pending on direct review, with no exception for cases in which the new rule constitutes a clear break with the past precedent. *Id.*[2]

Finally, in *Jeffries*, we reversed the conviction of a greater offense because the lesser-included offense instruction was not given. We did not analyze whether the factual test had been met. However, we could have given this newly-determined principle prospective operation only, deter-

---

**2.** Although we are not required to follow the *Griffith* case because lesser-included offenses do not infringe on a constitutional right, the reasoning adopted therein is applicable to this situation. The Court opined that the nature of judicial review mandates that the court decide the case before it. Once a new rule has been announced in light of the court's best understanding of the governing principles, the integrity of judicial review requires the new rule to be applied to all similar cases pending on review. 479 U.S. at 326–27, 107 S.Ct. at 715–16, 93 L.Ed. 2d at 661.

mined the traditional factual test had been met, and affirmed the case. *Monroe,* 236 N.W.2d at 38. Thus, in *Jeffries,* without so stating, we did apply the newly-announced rule retrospectively. We believe that it would be unfair not to apply it in this case when error was preserved.

II. *Application of Jeffries.* Defendant submitted proposed jury instructions that, if given, would have required the jury to consider lesser-included offenses on each count of the information.

A. *Arson.* We must first determine whether the charged offense of arson in the first degree has lesser-included offenses. Under *Jeffries,* we apply the legal test to determine whether the elements of the lesser-included offense are solely some, but not all, of the elements of the greater offense.

■ Defendant requested two lesser-included offense submissions. The State concedes that arson in the second degree meets the test; it is a lesser-included offense. Defendant was entitled to the requested instruction.

In determining whether the offense of reckless use of fire meets the legal test, we must compare the elements of the two crimes. The elements of arson in the first degree, as applied to the trial information, are:

1. Defendant caused a fire in the Sidhu home.
2. Defendant intended to destroy or damage the property or knew the property would probably be destroyed or damaged.
3. The property was one in which the presence of one or more persons could be reasonably anticipated.

The reckless use of fire speaks to "[a]ny person who shall so use fire or any incendiary ... material as to recklessly endanger the property or safety of another...." § 712.5.

The State argues that the legal test is not met in this situation because it is possible to "cause" a fire (required in section 712.1 for arson) without "using" fire (specified in section 712.5 for reckless use of fire). It gives the illustration that rubbing sticks together causes a fire, but does not use fire. There is no merit in this argument.

We would agree with the State that the accepted applications of the terms "causing," relating to bringing about, and "use," relating to the act of employing, are not necessarily synonymous. However, we conclude that the meanings of the terms as used in sections 712.1 and 712.5 are synonymous. To commit arson, the term "causing a fire" must be done "with the intent to destroy or damage such property, or with the knowledge that such property will probably be destroyed or damaged...." § 712.1. Reckless use of fire specifies that the act "recklessly endanger the property or safety of another...." § 712.5. As these terms are used, we fail to see a significant difference in them. In the context of the statutes, both terms require the utilization of fire with intent to harm or endanger. An appropriate comparison may be made to the general rule that the terms "set fire to" and "burn" are synonymous. Annotation, *Burning as Element of Offense of Arson,* 1 A.L.R. 1164 (1919); *State v. Taylor,* 45 Me. 322, 329 (1858).

The State further claims that the crime of reckless use of fire requires a finding of recklessness, an element not found in arson. The definition of "reckless" in Iowa Code section 702.16 requires that the acts are to be done with a willful or wanton disregard for the safety of persons or property. The alternative of willful intent is similar to "with the intent to destroy or damage such property," found in the definition of arson. § 712.1. In his treatise on criminal law, LaFave distinguishes between the two merely in terms of probability of causing the results:

> [W]hile "knowledge" and the knowing-type of "intention" requires a consciousness of almost-certainty, recklessness requires a consciousness of something far less than certainty or even probability.

W. LaFave & A. Scott, *Criminal Law,* § 3.7(f), p. 239–40 (2d ed.1986). Recklessness, although a lesser degree, is an includ-

ed part of the element of intent found in arson.

We conclude that reckless use of fire meets the legal test of being a lesser-included offense of arson in the first degree. Defendant was entitled to the requested instruction.

■ Under our holding in *Jeffries*, the court erred by failing to submit the lesser-included offenses of arson in the second degree and reckless use of fire for jury consideration. The failure to instruct on these requested lesser-included offenses, which meet the test we have outlined, is reversible error. *Mount*, 422 N.W.2d at 501; *See* Iowa R.Crim.P. 6(3). The arson conviction must therefore be reversed.

B. *Murder.* We must next determine whether the charged offense of murder in the first degree committed while participating in a forcible felony (arson in the first degree) requires the submission of lesser-included offenses. Defendant requested the inclusion of three instructions on involuntary manslaughter.

Involuntary manslaughter is defined as follows:

1. A person commits a class "D" felony when the person unintentionally causes the death of another person by the commission of a public offense other than a forcible felony or escape.

2. A person commits an aggravated misdemeanor when the person unintentionally causes the death of another person by the commission of an act in a manner likely to cause death or serious injury.

§ 707.5. Under subsection one, defendant requested two instructions for unintentionally causing death by commission of the public offenses of (1) arson in the second degree and (2) reckless use of fire. His third request asked for an instruction under subsection two for unintentionally causing the death of another person while committing an act likely to cause death or serious injury.

■ The legal test for an included offense is met by the specific statutory language of section 707.5, which provides that

involuntary manslaughter "is an included offense of murder in the first degree." *Jeffries*, 430 N.W.2d at 737. This does not end our inquiry, however. Before submitting these statutorily created lesser-included offenses, we stated: "[T]he trial courts must apply the factual test to determine if sufficient evidence exists to submit these statutorily mandated lesser-included offenses." *Id.*

However, the "factual test" in this instance is not the familiar query which we have employed in the traditional two-step analysis. Under this earlier test, we sought to determine whether the elevating element in the greater offense was established so firmly "that a reasonable person viewing the evidence could *only* conclude that the major offense, or no offense, has been committed." *Mount*, 422 N.W.2d at 501. Otherwise, it was a jury question to select the proper degree of the offense. *Id.*

Our abandonment of the traditional factual test in *Jeffries* was premised on two factors. First, we recognized that a not guilty plea controverts *all* elements of the offense and requires the State to prove the elements beyond a reasonable doubt. Second, we also recognized that the jury may reject all or any part of the state's evidence, whether controverted or not. Logically, then, the possibility of finding a lesser-included offense is always present. Simply put, if the evidence is sufficient to convict of the greater offense, then, as a matter of law, it is sufficient to convict of any lesser-included offense. *Jeffries*, 430 N.W.2d at 733.

In the case of statutorily mandated lesser-included offenses, however, a factual test is necessary because the lesser-included offense usually contains elements not found in the greater offense. There is no problem with the similar elements between the greater and lesser offenses: if there is substantial evidence that justifies submitting the greater offense, then there necessarily is substantial evidence of the similar elements in the lesser-included offense. Our problem is with the foreign elements. The trial court must determine whether the

foreign elements are also supported by substantial evidence. Stated otherwise, there may be substantial evidence to create a jury question on all elements of the greater offense but no substantial evidence of one or more of the foreign elements of the statutorily mandated lesser-included offense. Consequently, the necessary factual test is whether substantial evidence of each necessary element of the lesser-included offenses has been produced.

It may be asked why this factual examination is necessary, in light of the availability of a motion for a directed verdict of acquittal. Simply, the defendant may want the lesser-included offense submitted as a hedge for a compromise verdict and make no such motion. If the court cannot, or is not required to, make such an analysis, convictions could be obtained on offenses which the evidence does not legally support.

If there is substantial evidence of each element contained in the lesser-included offense, the trial court must follow the statutory dictate to submit the offense for jury consideration.

■ In this case, defendant requested an instruction on involuntary manslaughter as defined in subsection two. This subsection requires death caused "by the commission of an *act* in a manner likely to cause death or serious injury." Under our previous cases, we held that this "act" does not include a public offense as defined in § 707.5(1). *State v. Inger*, 292 N.W.2d 119, 123–24 (Iowa 1980); *see also State v. Ware*, 338 N.W.2d 707, 715 (Iowa 1983); *State v. Dvorsky*, 322 N.W.2d 62, 66 (Iowa 1982).

In *Inger*, defendant was charged with murder in the second degree. 292 N.W.2d at 120. The evidence showed the only possible *act* attributable to defendant "likely to cause death or injury" was a public offense—assault. *Id.* at 124. We held that the factual test of subsection two cannot be met in such a case. *Id.*

The defendant in *Ware* was charged with two counts of murder in the first degree: premeditated murder and felony murder arising out of an armed robbery. 338 N.W. 2d at 709, 714. On the felony murder charge, defendant claimed he was entitled to have the lesser-included offense of involuntary manslaughter submitted to the jury. *Id.* at 714. Applying section 707.5(2), we further refined our definition of "act" as used in section 707.5(2) to mean "an act that is neither connected with a 'public offense' nor with a 'forcible felony or escape'" as those terms are used in the section 707.5(1) definition of involuntary manslaughter. *Id.* at 715. We held that the evidence produced did not provide a factual support for submission of the lesser-included offense, stating:

> It is entirely reasonable to infer from the statutory scheme in chapter 707 that a person who causes death during the reckless commission of a "forcible felony or escape" cannot be found guilty of the lesser offense of involuntary manslaughter. If that person is not convicted of a crime more serious than the offenses defined in section 707.5, the person cannot be convicted at all.

*Id.* at 715.

The teachings of *Inger* and *Ware* are two-fold. First, the "act" causing death under section 707.5(2) cannot be an act connected with a public offense. Second, under our traditional factual test involving the lesser-included offense of involuntary manslaughter pursuant to section 707.5(2), there must be some evidence of "act" causing the death other than a public offense.

■ In applying the factual test here, asking whether there is sufficient evidence to submit the lesser-included charge, we find none. The only "act" attributable to the defendant arose out of evidence showing that he entered the professor's house to cause or use fire with intent to destroy or damage property or in a manner that recklessly endangered the property or safety of another. These acts constitute public offenses. There was no substantial evidence for the element of an act causing death required by the lower offense. The trial court correctly refused to give an instruction on section 707.5(2).

■ Finally, we must determine whether there is sufficient evidence on each element

of the offense to raise a factual issue on section 707.5(1). This section defines unintentionally causing death by "commission of a public offense other than a forcible felony," which was arson in the first degree in this case. Defendant requested instructions of involuntary manslaughter under section 707.5(1) for the offenses of arson in the second degree and reckless use of fire, offenses that are not forcible felonies or escapes. Under this request the court must determine if there is substantial evidence that (1) defendant either committed the offense of arson in the second degree or reckless use of fire and (2) that by the commission of either offense, the defendant unintentionally caused the death of a Sidhu child.

There is substantial evidence of arson in the second degree and of reckless use of fire. Neither party contends that there was insufficient evidence to submit arson in the first degree. We held earlier that each of these lesser-included offenses met the legal test. Therefore, if sufficient evidence on the greater offense exists, there is sufficient evidence of the two lesser-included offenses.

There is also substantial evidence that the commission of either offense caused the death of a child. Neither party contends that there was insufficient evidence to submit the murder charge. Consequently, there is sufficient evidence on the element of unintentionally causing the death of a child.

The factual test was met on each element of each instruction for involuntary manslaughter under section 707.5(1). Under our holding in *Jeffries*, the lesser-included offenses of involuntary manslaughter pursuant to section 707.5(1) should have been given. The failure to instruct as requested constitutes reversible error on the murder charge.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.