**IN THE COURT OF APPEALS OF IOWA**

No. 3-960 / 12-1635
Filed March 12, 2014

CHAD ENDERLE,
 Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
 Respondent-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Nancy S. Tabor,

Judge.

Chad Enderle appeals the denial of his application for postconviction

relief. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Dennis D. Hendickson,

Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas H. Miller, Assistant Attorney

General, and Michael J. Walton, County Attorney, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Potterfield, JJ.

Tabor, J., takes no part.

**VAITHESWARAN, J.**

Chad Enderle appeals the denial of his application for postconviction relief.

### I.    *Background Facts and Proceedings*

Gregory Harris was found dead in Davenport, Iowa. The State charged Enderle with first-degree murder and willful injury, and the case proceeded to trial.

On the murder count, the jury was instructed that the State would have to prove Enderle either: "(a) acted willfully, deliberately, premeditatedly and with a specific intent to kill Gregory L. Harris; or (b) was participating in the offense of Willful Injury resulting in serious injury to Gregory L. Harris." The second alternative has come to be known as the felony-murder rule. *See State v. Heemstra*, 721 N.W.2d 549, 552 (Iowa 2006).

A jury found Enderle guilty as charged, and Enderle appealed. While his appeal was pending, the Iowa Supreme Court overruled existing precedent relating to the felony-murder rule. *Id.* at 558. The supreme court held "if the act causing willful injury is the same act that causes the victim's death, the former is merged into the murder and therefore cannot serve as the predicate felony for felony-murder purposes." *Id.* The court reversed and remanded for a new trial. *Id.* at 563.

The court proceeded to address whether this holding would be applied retroactively. The court stated, "The rule of law announced in this case regarding the use of willful injury as a predicate felony for felony-murder purposes shall be

applicable only to the present case and those cases not finally resolved on direct appeal in which the issue has been raised in the district court." *Id.* at 558.

After *Heemstra* was filed, Enderle sought to amend his appellate brief to include the successful merger argument. The court denied his request. Later, the court affirmed his judgment and sentence. *See State v. Enderle*, 745 N.W.2d 438, 443 (Iowa 2007).

Enderle applied for postconviction relief. The district court held a hearing and denied the application in its entirety. Enderle appealed, raising several issues and sub-issues.

## II. Merger of Wilful Injury Count—Retroactive Application of Heemstra

Relying on *Heemstra*, Enderle contends his willful injury conviction should have merged with the murder conviction. He raises the issue in a number of ways, which we will now parse.

First, Enderle contends we should independently revisit and expand the limited retroactivity rule announced in *Heemstra.* In his view, *Heemstra* should apply to his case because his appeal was pending when *Heemstra* was decided.

*Heemstra*'s retroactivity rule was clear: the court's substantive holding would apply retroactively to cases pending on appeal only if the merger issue was "raised in the district court." *Heemstra*, 721 N.W.2d at 558. It is not our prerogative to overrule this directive. *See State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves.").

Second, Enderle argues his trial attorney was ineffective in failing to foresee the substantive holding of *Heemstra* and object to the jury instruction on that ground. To prevail, Enderle must establish (1) counsel breached an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Enderle's ineffective-assistance claim fails on the breach prong because *Heemstra* announced a change in the law, and it is established that counsel has no obligation to anticipate changes in the law. *See Heemstra*, 721 N.W.2d at 558 (overruling *State v. Beeman*, 315 N.W.2d 770 (Iowa 1982) and its progeny); *see also Goosman v. State*, 764 N.W.2d 539, 545 (Iowa 2009) (noting that the ruling in *Heemstra* was clearly a change in the law and not merely a clarification); *Snethen v. State*, 308 N.W.2d 11, 16 (Iowa 1981) ("Counsel need not be a crystal gazer; it is not necessary to know what the law will become in the future to provide effective assistance of counsel.").

We acknowledge an apparent disconnect between our conclusion that counsel was not obligated to preserve error and *Heemstra*'s retroactivity rule, which requires an attorney to have raised the *Heemstra* issue in the district court to benefit from *Heemstra*'s holding on appeal. But, in deciding an ineffective-assistance claim, our focus is not on counsel's ability to predict the outcome of a case. *See Morgan v. State*, 469 N.W.2d 419, 427 (Iowa 1991). The focus is on whether a reasonably competent attorney would have raised the issue. Enderle's trial attorney cogently testified that, at the time of Enderle's trial, "[w]illful injury was still a valid predicate felony for the felony murder rule." He pointed out the rule had been extant since 1982 and there "was nothing that [he]

found from [his] endeavors both looking at the law and discussing the issues with some of the attorneys that" would indicate the rule should be challenged. It is true Enderle would have benefited from *Heemstra* had his trial attorney raised the issue. The same was true in *Morgan*, yet the Iowa Supreme Court did not hold the attorney "to a duty of clairvoyance." *Id.* at 427. We also decline to do so.

Our conclusion that counsel did not breach an essential duty in failing to raise the *Heemstra* issue makes it unnecessary to address the State's alternate argument that *Heemstra* does not apply to the facts of Enderle's case. *See State v. Tribble*, 790 N.W.2d 121, 129 (Iowa 2010) (finding felony-murder statute applicable "when two independent acts both contribute to the death of the victim"). We also note the State did not raise this argument in the district court. *See Nguyen v. State*, 829 N.W.2d 183, 187 (Iowa 2013) (declining to reach State's arguments that were raised for the first time on appeal).

Enderle's third and final argument relating to *Heemstra* rests on several constitutional provisions. He asserts that retroactive application of *Heemstra* is mandated by the federal and state due process and equal protection clauses and the Iowa Constitution's separation of powers clause. The State counters that only his claim under the federal Due Process Clause was preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). We disagree with the State.

Enderle raised a challenge based on his due process "rights" and the district court ruled on his state and federal due process claims, stating, "Mr. Enderle's state and federal due process rights were not prejudiced by the limitations on the retroactivity of *Heemstra*." As for Enderle's equal protection claims, his postconviction brief asserted, "under Iowa's Equal Protection Clause, distinctions between classes of person must have some rational basis" and he was "entitled to due process and equal protections afforded under the Iowa and U.S. Constitutions and invoked in *Griffith*." *See Griffith v. Kentucky*, 479 U.S. 314, 323 (1987) ("[S]elective application of new rules violates the principle of treating similarly situated defendants the same."). The district court acknowledged Enderle's argument that Iowa courts have "unconstitutionally made a distinction between defendants whose case was still on direct appeal whose counsel raised the felony-murder issue and those whose case was still on direct appeal and whose counsel did not raise such an issue in the court below." While the court did not cite the equal protection clauses in addressing this argument, the court's discussion implicates those clauses. Accordingly, we conclude Enderle's challenges under the state due process clause and the federal and state equal protection clauses were preserved.

Remaining is Enderle's assertion that *Heemstra*'s limited retroactivity violates the separation of powers clause of article III, section 1 of the Iowa Constitution. This issue was neither raised by Enderle's postconviction attorney nor decided by the postconviction court. *See Goosman*, 764 N.W.2d at 545 (concluding a postconviction applicant did not raise equal protection or separation of powers arguments in his application for postconviction relief, the

district court did not rule on these issues, and as a result, these issues could not "be raised for the first time on appeal"). Acknowledging the absence of a record on this sub-issue, Enderle argues we should review it under an ineffective-assistance-of-postconviction-counsel rubric. We agree with Enderle that this exception to the error-preservation rule permits review of the issue. *See State v. Brothern*, 832 N.W.2d 187, 191 (Iowa 2013) ("Ineffective assistance of counsel is an exception to the traditional error preservation rules."). We proceed to the merits of the constitutional claims.

We begin with Enderle's federal due process claim. That claim was resolved in *Goosman*. There, the Iowa Supreme Court was asked to decide whether federal due process required retroactive application of *Heemstra* to postconviction relief proceedings. *Id.* The court read federal precedent to require that, "where a court announces a 'change' in substantive law which does not clarify existing law but overrules prior authoritative precedent on the same substantive issue, federal due process does not require retroactive application of the decision." The court concluded "the limitation of retroactivity announced in *Heemstra* to cases on direct appeal where the issue has been preserved did not violate federal due process." *Id.* at 545. This holding is controlling. Based on *Goosman*, we conclude federal due process does not require retroactive application of *Heemstra* to Enderle's case.

We turn to Enderle's state due process claim. Enderle argues "the Iowa Constitution's due process protection requires more than the federal constitution." He asserts "[f]undamental fairness strongly cries out for a new trial because Enderle is denied due process solely because he fell through the cracks

of the timing belt of *Heemstra*, a fall beyond his control despite efforts to correct in the appellate process of the criminal case."

The Iowa Supreme Court "has generally deemed the federal and state due process clauses to be 'identical in scope, import, and purpose.'" *State v. Nail*, 743 N.W.2d 535, 539 (Iowa 2007) (citations omitted). Enderle does not suggest a different approach under the state due process provision than the *Goosman* court used to analyze the federal due process claim. Accordingly, we will treat the state due process claim as identical. *See id.* Applying the *Goosman* analysis to that claim, we conclude the state constitution's due process clause does not mandate retroactive application of *Heemstra's* substantive holding to Enderle's case.

We next consider Heemstra's federal and state equal protection claims. Enderle contends "the court's decision to not apply the *Heemstra* case retroactively is an unreasonable classification which violates the equal protection provisions of the Fourteenth Amendment of the United States Constitution and Article One Section Six of the Iowa Constitution." This court was not persuaded by similar arguments in *Langdeaux v. State*, No. 10-1625, 2012 WL 1439077, at *7 (Iowa Ct. App. Apr. 25, 2012), *Dixon v. State*, No. 10-1691, 2011 WL 5867929, at *2–3 (Iowa Ct. App. Nov. 23, 2011) and *Herrarte v. State*, No. 08-1295, 2011 WL 768763, at *2 (Iowa Ct. App. Mar. 7, 2011). Enderle's argument is equally unpersuasive.

Enderle's classification is premised on those who preserved error and those who did not. He cites no authority holding that denial of retroactive application to those who fail to preserve error violates the equal protection

clauses of the federal and state constitutions. Indeed, in *Griffith*, 479 U.S. at 317–18, the primary opinion on which he relies, defense counsel raised the issue that became the subject of a subsequent Supreme Court opinion. *See also United States v. Curbelo*, 726 F.3d 1260, 1266–67 (11th Cir. 2013) ("*Griffith* does not allow Defendant to get around our usual rule that failing to file a suppression motion waives Fourth Amendment claims, even claims based on a new ruling from the Supreme Court."). The same is true of the Iowa Supreme Court opinion Enderle invokes, *State v. Royer*, 436 N.W.2d 637, 641 (Iowa 1989). There, defense counsel submitted a proposed jury instruction that, if given, would have comported with the Iowa Supreme Court's holding in a subsequent opinion. *Royer*, 436 N.W.2d at 641; *see also Everett v. Brewer*, 215 N.W.2d 244, 248 (Iowa 1974) ("We believe there is a rational basis for classifying appellants in accordance with whether their claim previously has been fully considered and adjudicated. Defendant's claim he was denied equal protection of the laws is without merit."). We conclude Enderle's attempted classification based on direct appeals that preserved the *Heemstra* issue and direct appeals that did not fails to trigger the protections of the equal protection clauses.

We are left with Enderle's claim that the separation of powers clause of the Iowa Constitution demands retroactive application of *Heemstra*. As noted, this issue was not preserved for review, requiring us to review it under an ineffective-assistance-of-postconviction-counsel rubric.

The constitutional doctrine of separation of powers is violated "if one branch of government purports to use powers that are clearly forbidden, or attempts to use powers granted by the constitution to another branch." *State v.*

*Phillips*, 610 N.W.2d 840, 842 (Iowa 2000). Enderle has not explained how the Iowa Supreme Court's decision to limit retroactive application of *Heemstra* encroached upon the powers granted to another branch of government.

That said, we acknowledge certain language in *Heemstra* at least superficially lends support to Enderle's argument. In particular, the court cited the State's argument that policy considerations for abandoning the felony-murder rule were rejected by the Iowa legislature and the court was not free to invoke those considerations, however valid they might be. *Heemstra*, 721 N.W.2d at 557. However, the court rejected the argument, stating "[t]he legislature has never considered the issue of whether, when the act causing willful injury is the same as that causing death, the two acts should be merged." *Id.* The court went on to state, "[W]e should not attribute to the legislature an intent to 'create[ ] an ever-expanding felony murder rule' by characterizing every willful injury as a forcible felony for felony-murder purposes." *Id.* at 558 (citing 4 Robert R. Rigg, *Iowa Practice Criminal Law (I)* § 3:16 (2006)). In sum, the court did not see its holding as an encroachment on legislative powers but as an effort to limit its broader interpretations of legislative intent. Because the *Heemstra* court effectively rejected Enderle's separation of powers argument, we conclude postconviction counsel did not breach an essential duty in failing to raise a separation of powers claim. We also note that this court rejected an identical argument in *Langdeaux*, 2012 WL 1439077, at *7. We are persuaded by the reasoning of that opinion.

In sum, we conclude the federal and state constitutional provisions cited by Enderle do not mandate retroactive application of the substantive holding of *Heemstra*.

We turn our attention to several arguments Enderle raised in a pro se filing which, contrary to the State's assertion, were timely.

### III.      *Jury Instruction on Willful Injury*

Enderle contends the district court erroneously instructed the jury on willful injury. His trial attorney did not object to the instruction at trial. Accordingly, he raised the issue at the postconviction hearing under an ineffective-assistance-of-counsel rubric. On appeal, Enderle does not reiterate that the issue is being raised as an ineffective-assistance-of-counsel claim. We will assume without deciding that he intended to do so.

In *State v. Schuler*, the court held that a uniform jury instruction on willful injury requiring the State to prove a defendant "sustained" a serious injury was an incorrect statement of the law because the statute referred to an act "which is intended to cause serious injury to another . . ." and a person who "causes serious injury to another." 774 N.W.2d 294, 298–99 (Iowa 2009) (quoting Iowa Code § 708.4(1) (2005)).

The willful injury instruction given in Enderle's case was virtually identical to the instruction subsequently disapproved in *Schuler*. However, *Schuler* was not decided until long after Enderle's appeal became final. Additionally, the Enderle instruction was based on a uniform jury instruction, which courts reluctantly disapprove. *See State v. Weaver*, 405 N.W.2d 852, 855 (Iowa 1987). Under these circumstances, we conclude Enderle's attorney did not breach an

essential duty in failing to predict this ground for objection. *See State v. Hepperle*, 530 N.W.2d 735, 740 (Iowa 1995).

## IV.    *"Duplicitous" Charges*

Enderle contends his trial attorney was ineffective in failing to object to what he characterizes as a "duplicitous" trial information in which he was charged with one count of first-degree murder under two alternatives. He argues:

> The trial information charged him with section 707.2(1) as well as 707.2(2). By charging two distinct acts, the State was allowed to propose to the jury two different findings upon which to rest its verdict, but did not require the finding of unanimity as required under Iowa law, Federal law, and the U.S. Constitution.

The Iowa Supreme Court rejected this proposition in *State v. Sharpe*, 304 N.W.2d 220, 222–23 (Iowa 1981), reaffirming the propriety of amending a charge of first-degree murder to allege a different means of committing the crime. *See also State v. Fuhrmann*, 257 N.W.2d 619, 624 (Iowa 1977) (noting that "[f]irst-degree murder may be committed in several ways" and holding under a prior version of the statute, that it was permissible to amend trial information charging first-degree murder to add a different alternative). If it is permissible to amend a trial information to add an alternate means of committing first-degree murder, it is permissible to include more than one alternative in the original trial information.

Enderle also contends reversal is mandated because "the jury rendered a general verdict of guilt," and the general verdict "does not reveal the basis [f]or a guilty verdict." *See Heemstra*, 721 N.W.2d at 558 ("When a general verdict does not reveal the basis for a guilty verdict, reversal is required."); *see also State v. Martens*, 569 N.W.2d 482, 485 (Iowa 1997) ("[T]he validity of a verdict based on facts legally supporting one theory for conviction of a defendant does not negate

the possibility of a wrongful conviction of a defendant under a theory containing legal error.").

Although Enderle received a general verdict, both alternatives found support in the law and the evidence at the time of the jury's finding of guilt. *See Enderle*, 745 N.W.2d at 443. For this reason, we find Enderle's argument unpersuasive. We affirm the district court's denial of Enderle's "duplicitous" trial information argument.

### V.    *Defective Trial Information—Willful Injury*

Enderle next argues, "The trial information in Defendant's case does not allege any facts or elements as to Willful Injury in Count II. It simply parrots the language of the statute without charging the elements of Willful Injury." He raises the issue under an ineffective-assistance-of-counsel rubric.

A defendant only needs to be "alert[ed] . . . generally to the source and nature of the evidence against him." *See State v. Dalton,* 674 N.W.2d 111, 120 (Iowa 2004) (quotation marks and citation omitted); *State v. Grice,* 515 N.W.2d 20, 22 (Iowa 1994) ("Generally an information need not detail the manner in which the offense was committed."). The trial information comported with this rule. Accordingly, we conclude Enderle's trial attorney did not breach an essential duty in failing to object to the trial information on this basis.

### VI.    *Suppression of Exculpatory Evidence*

Enderle next contends the State suppressed exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In his view, the State was aware that a partial palm print found on a walking stick alleged to have been one of the murder weapons did not match his print. He asserts this information

should have been disclosed prior to trial. Because Enderle's trial and direct appeal attorneys did not raise the issue, Enderle raised the issue at postconviction under an ineffective-assistance-of-counsel rubric. We will review the issue in that context.

To establish a *Brady* violation, the defendant must prove by a preponderance of the evidence that: "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt." *Harrington v. State*, 659 N.W.2d 509, 516 (Iowa 2003) (quotation marks and citation omitted).

Enderle did not establish the first element. He conceded a department of criminal investigation criminalist disclosed the existence of the palm print during trial. His attorney cross-examined the criminalist about the palm print and elicited an admission that the palm print was compared to Enderle's print and the result was "[n]egative." His attorney also cross-examined a police lieutenant about the palm print and again established that the palm print was not made by Enderle but by a person unknown to the lieutenant. Because Enderle was able to make use of the evidence before the jury found guilt, we conclude the evidence was not suppressed. *See State v. Bishop*, 387 N.W.2d 554, 559 (Iowa 1986) (stating the exculpatory evidence "was before the jury when they made their decision" and "[w]here, as here, the evidence was disclosed during trial and at a meaningful time, due process has not been denied"); *see also State v. Veal*, 564 N.W.2d 797, 810 (Iowa 1997) ("Evidence is not considered 'suppressed' if the defense is able to take advantage of it at trial."), *overruled on other grounds by State v. Hallum*, 585 N.W.2d 249 (Iowa 1998). Accordingly, trial and appellate counsel

did not breach an essential duty in failing to argue that the evidence was suppressed.

### VII.    Failure to Call Witnesses

Enderle asserts his trial attorney was ineffective in failing to call two witnesses—Tammy McNeal and Don Lawless—who, in his view, would have testified that another individual expressed an intent to kill Harris.

"Claims of ineffective assistance involving tactical or strategic decisions of counsel must be examined in light of all the circumstances to ascertain whether the actions were a product of tactics or inattention to the responsibilities of an attorney." *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011) (quotation marks and citation omitted).  Enderle's trial attorney expressed concern about calling McNeal as a witness because of "just how she came across."  In his view, "She didn't come across well."  As for Lawson, the attorney was not sure if they could find the witness.  Additionally, he explained that Lawson might open the door to testimony about drugs being exchanged for sex, which the defense hoped to avoid.

We conclude the attorney made a strategic decision not to call these witnesses.  Therefore, Enderle's ineffective-assistance-of-counsel claim fails.

### VIII.    Bloody Fingerprints

Enderle next argues his trial attorney was ineffective in failing to challenge what he describes as "inflammatory references" to bloody finger prints on a cigarette box found at the crime scene.  He specifically refers to the testimony of a police officer who was asked if a fingerprint was "clear enough just in the blood that it wasn't necessary to enhance it further" and who responded, "Yes, sir."

The officer was then asked, "So, in fact, the blood actually was like the agent that brought out the print?" The officer responded, "In essence, when you fingerprint somebody, you use ink as a medium, and you roll that print on paper. In this case, instead of ink, the print was left with the blood on the finger on the item." No objections were made to this line of questioning. Counsel did object when the officer was asked what material the fingerprint was made with. After additional foundation was laid, the officer was allowed to testify that, in his opinion, "it appears that the medium that the fingerprint was made with would be blood." Another officer also testified that there was blood spatter across the cigarette package. The State did not test the substance that captured the fingerprint.

At the postconviction relief hearing, Enderle's trial attorney said he used the State's failure to test the substance to advance his theory that the State conducted an incomplete investigation. While he acknowledged he could have objected "earlier and more often" to the officers' opinions that the substance was blood, he testified he believed he accomplished his goal of disparaging the investigation with the objections he did make and with his closing argument.

We conclude Enderle's trial attorney did not breach an essential duty in failing to object more vigorously to the testimony of blood on the cigarette package.

### IX. Fingerprint Identification

Enderle next asserts counsel was ineffective in failing to challenge the State's fingerprint identification evidence. He suggests his attorney should have done more to discredit the State's fingerprint expert.

Enderle's attorney retained a fingerprint expert but did not call him as a witness at trial. In lieu of retaining a trial expert, he vigorously cross-examined the police lieutenant and others about the fingerprint evidence. While Enderle hired a fingerprint expert at the postconviction relief hearing who opined to flaws in the State's analysis, the State severely impeached this testimony. We conclude Enderle's trial attorney did not breach an essential duty by declining to call a fingerprint expert at trial.

## X.    *Newly-Discovered Evidence*

Finally, Enderle contends he is entitled to a new trial based on articles and reports that question the validity of fingerprint evidence. His main focus is on a 2009 report released by the National Research Council, identifying several areas of forensic science in need of improvement, including fingerprint analysis. Committee on Identifying the Needs of the Forensic Science Community et al., National Research Council of the National Academies, *Strengthening Forensic Science in the United States: A Path Forward* (2009). Enderle contends this report constitutes "newly-discovered evidence."

Iowa Code section 822.2(d) (2009) permits a new trial if "[t]here exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice." In order to pursue a successful claim based on newly-discovered evidence, the applicant must show:

> (1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) that the evidence probably would have changed the result of the trial.

*Harrington*, 659 N.W.2d at 516 (quotation marks and citation omitted). We question whether the article is "evidence" within the meaning of the rule. Assuming it is, Enderle admits similar articles appeared well before his trial. His concession is dispositive of the issue. We conclude the report Enderle cites is not newly-discovered evidence entitling him to a new trial.

We affirm the denial of Enderle's postconviction relief application.

**AFFIRMED.**