STATE of Iowa, Appellee,

v.

Mark Alan INGER, Appellant.

No. 63413.

Supreme Court of Iowa.

May 21, 1980.

William F. Olinger and Thomas P. Peffer, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Kathy A. Krewer, Asst. Atty. Gen., Eugene J. Kopecky, County Atty., and Denver D. Dillard, Asst. County Atty., for appellee.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McGIVERIN and LARSON, JJ.

McGIVERIN, Justice.

Defendant Mark Alan Inger appeals from his jury trial conviction and sentence for voluntary manslaughter in violation of section 707.4, The Code 1979, in connection with the death of Robert Neve. Defendant claims trial court erred in four respects. We affirm.

We must consider the following issues:

1. Whether there was sufficient evidence to justify the submission of an instruction on voluntary manslaughter for jury consideration;

2. Whether reversal is required because trial court failed to submit to the jury the lesser included offense of involuntary manslaughter, an aggravated misdemeanor in violation of section 707.5(2), The Code 1979;

3. Whether the State proved the victim's "death," as that term is defined in section 702.8, The Code 1979, prior to his being disconnected from a life support system; and

4. Whether trial court abused its discretion by sentencing defendant to incarceration rather than probation.

Defendant, at age seventeen, was charged by information with second-degree murder in violation of sections 707.1 and .3, The Code, following his transfer from juvenile court. The charge was based on the death of Robert Neve arising from an altercation on September 3, 1978, outside a grocery store in Cedar Rapids. The jury found defendant guilty of the lesser included offense of voluntary manslaughter.

As defendant and two other boys were leaving the store and Neve was entering, defendant made an unflattering comment about the length of Neve's hair. A fight ensued in the parking lot near the store between defendant and Neve. Several witnesses saw the fight. During the course of the fight, Neve fell or was knocked down by defendant and struck his head on the corner of a square metal roof support pole. Shortly thereafter, defendant kicked Neve in the head as he lay on the ground. Defendant then left the area.

An ambulance was called. The ambulance personnel administered emergency treatment, placed Neve on an artificial life support system, and took him to the hospital. He was there diagnosed as having severe brain damage. He continued in an unconscious state on support systems for several days. When later tests showed no brain activity and that his heart ceased to function, the medical decision was made on September 9 to remove the life support system because Neve was dead. The second-degree murder charge followed.

Other facts will be stated later as necessary for an understanding of the issues presented for review.

*I. Instructing the jury on voluntary manslaughter.* Defendant first contends there was an insufficient factual basis for the court to submit voluntary manslaughter as a lesser included offense for jury consideration. We disagree.

Over defendant's proper objection, the court instructed on voluntary manslaughter as an included offense in second-degree murder, the charge in the information. In doing this, the court was guided by Iowa R.Crim.P. 6(3)[1] and 21(3).[2]

We are not faced with the same issue as was presented in *State v. Veverka,* 271 N.W.2d 744, 749 (Iowa 1978). In *Veverka* the defendant affirmatively requested that certain instructions on lesser included offenses not be given. The trial court, pursuant to that request, did not give such instructions. After conviction of the crime charged, defendant then claimed that it was error for the court not to instruct on the lesser included offenses despite defendant's own request. We said that when a defendant affirmatively requests that instructions on lesser included offenses not be given and where the court, therefore, does not give the instructions, the defendant cannot later complain of an alleged error by the court in failing to instruct sua sponte contrary to defendant's request at trial. By making an affirmative request to the contrary at trial, the error claimed on appeal was not preserved. The defendant in *Veverka* affirmatively waived any error; however, we did not purport to determine whether a defendant had a right to affirmatively waive submission of lesser included offenses. In the present case defendant has properly preserved his allegation of error for our review.

Section 707.4 provides:

A person commits voluntary manslaughter when that person causes the death of another person, under circumstances which would otherwise be murder, if he or she acts solely as the result of sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a person and there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain his or her control and suppress the impulse to kill.

Voluntary manslaughter is an included offense under an indictment for murder in the first or second degree.

Voluntary manslaughter is a class "C" felony.

Defendant correctly states we established a two-part test to determine whether a particular crime should be submitted to the fact finder on the theory that it is a lesser included offense in the crime charged. In *State v. Rand,* 268 N.W.2d 642, 646 (Iowa 1979) we summarized the rule as follows:

Our decisions have now established the rule a lesser included offense may be submitted to the fact finder when (1) the elements of the lesser offense are an elementary part of the greater offense (the legal test), and (2) there is a factual basis in the record for submitting the included offense (the factual test). *State v. Millspaugh,* 257 N.W.2d 513, 516 (Iowa 1977); *State v. Rosewall,* 239 N.W.2d 171, 174 (Iowa 1976). . . . Further, the essential elements of the offenses, and consequently, the included offense (insofar as the legal test is concerned), are established by the statutes and not the accusatory charge. *State v. Redmon,* 244 N.W.2d 792, 801 (Iowa 1976).

By the second paragraph of section 707.4, the legislature has seen fit to

---

1. Iowa R.Crim.P. 6(3) states:

In cases where the public offense charged may include some lesser offense it is the duty of the trial court to instruct the jury, not only as to the public offense charged but as to all lesser offenses of which the accused might be found guilty under the indictment and upon the evidence adduced, even though such instructions have not been requested.

2. Iowa R.Crim.P. 21(3) provides in part:

In all cases, the defendant may be found guilty of any offense the commission of which is necessarily included in that with which the defendant is charged.

make voluntary manslaughter a lesser included offense in second-degree murder. Therefore, the "legal" test stated in *Rand* is satisfied. However, for the court to properly give a voluntary manslaughter instruction over specific objection by a party, there must also exist in the record a factual basis for such an instruction.

In explaining one of the elements of voluntary manslaughter, the trial court stated in instruction 25 "with regard to element No. 3 of instruction No. 24, you are instructed that 'serious provocation' is conduct that would excite, in a reasonable person, a sudden violent and irresistible passion."

■ Section 707.4 requires that both a subjective standard and objective standards be met before a defendant can be convicted of voluntary manslaughter. The subjective requirement of section 707.4 is that the defendant must act solely as a result of sudden, violent, and irresistible passion. The sudden, violent, and irresistible passion must result from serious provocation sufficient to excite such passion in a reasonable person. This is an objective requirement. It is also necessary, as a final objective requirement, that there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain his or her control and suppress the impulse to kill.

The specific attack defendant makes on submitting voluntary manslaughter is that the record does not provide a factual basis for the assertion that Neve's conduct would excite in a reasonable person a sudden, violent, and irresistible passion. The State contends otherwise. Therefore, we must examine the factual record in this regard.

The jury could have believed there was serious provocation from an assault. There was evidence to the following effect. After defendant insulted Neve about his hair, harsh words were exhanged between defendant and Neve. Defendant testified that decedent attempted to strike him, thereby inducing defendant to swing at Neve out of fear or anger. *See* R. Perkins, *Criminal Law* 60–61 (2d Ed. 1969); LaFave & Scott, *Criminal Law* 575 (1972) (provocation resulting from assault). Other evidence showed Neve then hit defendant in the head with his fist. Neve somehow fell down against a metal pole supporting the grocery store and, while Neve was down, defendant quickly kicked Neve in the head.

The jury could have also believed that provocation resulted from the mutual combat—that while defendant did not act out of passion in striking the first blow, he became excited during the affray and did act out of passion in striking the final, probably fatal blow, of kicking the decedent in the head. *See* Perkins at 56–59; LaFave & Scott at 574–75 (provocation resulting from mutual combat).

Defendant's own testimony provides a sufficient factual basis to meet the subjective requirement that the defendant acted solely as a result of sudden, violent, and irresistible passion. It is also possible under this factual record that a jury could have found there was not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain his or her control and suppress the impulse to kill.

■ Therefore, there was a factual basis to generate a jury question on voluntary manslaughter. No merit exists in defendant's first assignment.

*II. Failure to submit involuntary manslaughter, an aggravated misdemeanor under section 707.5(2), The Code.* The court instructed the jury on the charge in the information, second-degree murder, a class "B" felony under sections 707.1 and .3, and the included offenses of voluntary manslaughter, a class "C" felony under section 707.4, and involuntary manslaughter, a class "D" felony under section 707.5(1).

Defendant claims the court committed reversible error in refusing to submit to the jury the additional lesser included offense of involuntary manslaughter, an aggravated misdemeanor under section 707.5(2), The Code. He preserved error on this point.

Section 707.5 on involuntary manslaughter provides:

1. A person commits a class "D" felony when the person unintentionally causes the death of another person by the commission of a public offense other than a forcible felony or escape.

2. A person commits an aggravated misdemeanor when the person unintentionally causes the death of another person by the commission of an act in a manner likely to cause death or serious injury.

Involuntary manslaughter as defined in this section is an included offense under an indictment for murder in the first or second degree or voluntary manslaughter.

By the last paragraph of section 707.5, the legislature made involuntary manslaughter a lesser included offense under second-degree murder and voluntary manslaughter. Therefore, the legal test in *Rand*, 268 N.W.2d at 646, is satisfied in considering defendant's contention as to the submissibility of section 707.5(2) as a lesser included offense.

We note that in submitting the lesser included offense of felony involuntary manslaughter under section 707.5(1), the court instructed in substance that the jury could consider whether the State proved defendant committed an assault (as defined by sections 708.1(1) and (2), a public offense) and that by commission of which defendant unintentionally caused Neve's death. However, section 707.5(2) applies when a person unintentionally causes the death of another person by the commission of an act in a manner likely to cause death or serious injury. We must, therefore, first determine what the elements of section 707.5(2) are before we can establish whether the factual test can be met in this case.

A strict reading of the statutory language of section 707.5, in light of *State v. Conner*, 292 N.W.2d 682 (Iowa 1980), would lead us to a determination that if a person unintentionally causes the death of another person by the reckless commission of a *"public offense"* other than a forcible felony or escape, it is entirely possible that the person could not only be charged and convicted under subsection (1) but also be

charged and convicted under subsection (2). This is because, while both provisions require proof the act was done recklessly, *see State v. Conner*, 292 N.W.2d at 682, section 707.5(2) requires the conviction of a person who unintentionally causes the death of a person by the commission of *"an act"* in a manner likely to cause death or serious injury. It is quite possible that the *"act"* done in a manner likely to cause serious injury or death could very well be a *"public offense"* within the meaning of that term in section 707.5(1). Thus, if the *"act"* required under section 707.5(1) includes *"public offenses,"* the same conduct would violate both sections 707.5(1) and (2). This result is not necessarily disturbing until we notice that a violation of section 707.5(1) is a class "D" felony and a violation of section 707.5(2) is an aggravated misdemeanor. Therefore, the same act, according to this reading of the statute, may be subject to different punishments at the whim of the fact finder. We do not believe the legislature intended such an anomalous result when it enacted section 707.5 and, therefore, decline to read the statute in such a manner.

It is entirely reasonable to infer from section 707.5 that the legislature intended that any person, who unintentionally caused the death of another person by the reckless commission of a "public offense," other than a forcible felony or escape, be subject to the punishment provided for under class "D" felonies. The legislature could have believed that such a punishment was warranted when a "public offense" is involved. However, if the legislature made that determination, it does not follow that the same conduct could be punished only as an aggravated misdemeanor under section 707.5(2) and not as a class "D" felony under section 707.5(1).

■ In order to interpret the statute in a logical way and at the same time to give the language of section 707.5 the strictest construction possible, it is necessary to construe the term *"act"* in section 707.5(2) as meaning an act that is *not* a public offense as defined in section 707.5(1). This con-

struction of the involuntary manslaughter statute attributes to the legislature a logical reason for punishing subsection (1) and (2) violations differently. Such a reading also removes the incongruity of having a person, through the commission of one act, be equally guilty of both subsections (1) and (2), which would leave the degree of punishment to be determined by the fact finder on no legally distinguishable basis.

■ We have defined the term "*act*" in section 707.5(2) as an act that is *not* a public offense as defined in section 707.5(1). Hence, we find that the trial court in the present case did not err in refusing to instruct on involuntary manslaughter under section 707.5(2) because the factual test cannot be met. The only possible *act* attributable to defendant likely to cause death or serious injury is an assault, a *public offense* within the meaning of section 707.5(1).[3]

We find no error in this assignment.

*III. Proof of death.* Defendant claims the State failed to prove by evidence beyond a reasonable doubt that the wrongful force inflicted by defendant resulted in the "death" of Robert Neve. Inger says that because two physicians did not testify as to an irreversible cessation of spontaneous "brain functions" on Neve's part as required in section 702.8, the State failed to prove Neve was dead and Inger's motion for judgment of acquittal should have been granted.

The State asserts that the brain death test, which defendant wishes to have this court adopt under the facts of this case, should not be applied because a determination that the spontaneous respiratory and circulatory functions had ceased was not precluded by the use of artificial means of support. Therefore, the testimony by one doctor as to the victim's death was sufficient to allow the jury to find that Robert Neve was dead when he was removed from the life support system.

In the alternative the State argues that even if the brain death standard does apply, Neve was dead before the system was removed.

The State also says that even if the victim was not dead when he was removed from the life support system, the trauma inflicted by defendant was the proximate cause of his death and the medical treatment given Neve was not a supervening cause of death.

The testimony shows that Neve was breathing on his own after he had been kicked in the head by defendant. Officer Fisher testified that after the ambulance personnel arrived the victim was given oxygen. When Neve arrived at the hospital, he was breathing through a respirator. Dr. Donald Nelson stated that at the time Neve was brought to the emergency room he "did have a pulse and [Dr. Nelson] could hear a heart beat." The doctor further testified that although the victim did have a heartbeat, "he was not breathing on his own, and he was not giving the respirator any help in breathing for him . . . [but] definitely his heart was functioning." Dr. Nelson also said that without the pump to support Neve's heart his circulation would eventually fail.

Doctor Nelson, upon Robert Neve's admittance to the hospital, made a diagnosis of severe brain damage and felt that his brain was dead.

At a later point in time the victim's heart ceased to function. Dr. Nelson and Dr. LeMorgese both examined the victim and detected no evidence of neurological function in clinical response tests. An initial electroencephalagram (EEG) showed brain disfunction but some brain wave function and consequently no brain death. A later EEG showed no brain activity and the support system was then disconnected.

Two physicians did not testify as to an irreversible cessation of spontaneous brain

---

3. For an example of an "*act*" that was held "likely to cause death or serious injury" within the definition of section 707.5(2), *see State v. Marti*, 290 N.W.2d 570, 583 (Iowa 1980) ("pre-

paring and providing a weapon for one who is unable to do so and is known to be intoxicated and probably suicidal . . . .").

functions on the part of the victim. The record indicates that, when tested by Dr. LaMorgese, the victim did not meet the criteria for brain death.

Section 702.8 provides as follows:

"Death" means the condition determined by the following standard: A person will be considered dead if in the announced opinion of a physician, based on ordinary standards of medical practice, that person has experienced an irreversible cessation of spontaneous respiratory and circulatory functions. In the event that artificial means of support preclude a determination that these functions have ceased, a person will be considered dead if in the announced opinion of two physicians, based on ordinary standards of medical practice, that person has experienced an irreversible cessation of spontaneous brain functions. Death will have occurred at the time when the relevant functions ceased.

Although we are asked to do so by defendant, we need not determine whether the State proved beyond a reasonable doubt that the victim was dead within the meaning of section 702.8 when the artificial means of support were removed from his body. The dispositive question here is whether the trauma inflicted by defendant was the proximate cause of the victim's death.

. The jury was instructed as follows on the issue of causation:

One of the essential elements which the State is required to prove by evidence beyond a reasonable doubt is that a wrongful force inflicted by the defendant resulted in the death of Robert Neve.

If you find beyond a reasonable doubt that the defendant did a wrongful act which caused or directly contributed to the death, then his act resulted in the death of Robert Neve, within the meaning of these instructions.

■ There was sufficient evidence presented by the State from which the jury could have found the trauma inflicted by defendant was the proximate cause of the victim's death pursuant to the above instruction. .

■ It is well established that ordinarily negligent treatment or neglect of an injury will not excuse a wrong done unless the treatment or neglect was the sole cause of death. *State v. McClain*, 256 Iowa 175, 189, 125 N.W.2d 764, 772 (1964); *State v. Bahl*, 242 N.W.2d 298, 302–03 (Iowa 1976); *see also Haumersen v. Ford Motor Company*, 257 N.W.2d 7, 15 (Iowa 1977).

"[E]ven if the respirator was stopped prematurely, defendant [is] still liable, since intervening medical error is not a defense to a defendant who has inflicted a mortal wound upon another." *People v. Vanderford*, 77 Mich.App. 370, 372–73, 258 N.W.2d 502, 503 (1977) (interpreting a statute similar to section 702.8 of the Code of Iowa).

We find no error in this division.

*IV. The sentence.* The court sentenced defendant under sections 707.4 and 902.9(3), The Code, for a term of confinement not to exceed ten years. Defendant contends the court abused its discretion and should have sentenced defendant to probation. He asks us to modify the sentence under section 814.20, The Code, which states, in part, that ". . . the appellate court may also order a new trial, or reduce the punishment, but cannot increase it." *See also State v. DeRaad*, 164 N.W.2d 108 (Iowa 1969).

Guidelines and alternatives for sentencing are set forth in section 901.5, The Code. In addition, in determining the propriety of a particular sentence we have said a trial court, as well as a reviewing court, should weigh and consider all pertinent matters, including:

the nature of the offense, the attending circumstances, the defendant's age, character and propensities, and chances of his reform. The courts owe a duty to the public as much as to defendant in determining a proper sentence. The punishment should fit both the crime and the individual. [24 C.J.S. Criminal Law § 1980; *State v. Cupples*, 260 Iowa 1192, 1197, 152 N.W.2d 277, 280 (Iowa 1967)].

*State v. Overstreet*, 243 N.W.2d 880, 887 (Iowa 1976).

A sentence within the statutory limits will be set aside only for an abuse of discretion. *State v. Nelson*, 279 N.W.2d 1, 3 (Iowa 1979).

At the sentencing hearing, defendant presented witnesses who urged probation for defendant. On the other hand, the presentence investigator recommended incarceration. The court was entitled to give weight to this recommendation. *See Nelson*, 279 N.W.2d at 3–4. At the same time sentence was pronounced for voluntary manslaughter, defendant was sentenced to a prison term for an unrelated offense of burglary in the second degree in violation of sections 713.1 and 902.9(3), The Code, and then given probation. However, on the voluntary manslaughter charge the court did not give probation. The court expressed concern in the court-reported record that defendant had kicked decedent in the head while he was down and over defendant's lack of remorse for the offense. In its written judgment entry, the court gave as additional reasons for the sentence that the offense resulted in a death and that the sentence can act as a deterrent to defendant and others.[4]

Without further detailing the record, we have reconsidered the sentencing options in section 901.5 and the *Overstreet* factors. The sentence imposed was within the statutory limits. We hold there was no abuse of the court's discretion in imposing the sentence here.

Because we find no reversible error, the case is affirmed.

AFFIRMED.

---

4. Section 901.5 gives the court the discretion, inter alia, to determine a sentence that will provide for the protection of the community from further offenses by the defendant and others.