# IN THE COURT OF APPEALS OF IOWA

No. 21-0759
Filed September 21, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**REVETTE ANN SAUSER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Delaware County, Joel A. Dalrymple,

Judge.

        A defendant appeals her conviction for murder in the first degree, claiming

the district court erred in refusing to instruct the jury on voluntary manslaughter.

**AFFIRMED.**

        Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee State.

        Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**BADDING, Judge.**

In its opening statement at Revette Sauser's trial for murdering her husband Terry, the State told the jury the evidence would show "she was jealous.  She shot her husband.  And she killed him."  After hearing that evidence, the jury found Sauser guilty of first-degree murder.  Sauser appeals, claiming that because there was substantial evidence showing "she was provoked at the time of the shooting," the district court erred in refusing to give an instruction on the lesser-included offense of voluntary manslaughter.  We reject this claim and affirm.

## I.    Background Facts and Proceedings

On the evening of April 3, 2011, Sauser called 911 to report she accidentally shot her husband, Terry, at their home in Ryan.  Sauser told the dispatcher that she and Terry had been arguing on the couch and he wouldn't let her leave.  When she tried to get up, Sauser said that Terry grabbed a gun she had in her lap and it "automatically went off."  Terry was pronounced dead about one hour after Sauser placed the 911 call.

Sauser was transported to the sheriff's department where she was questioned into the early morning hours by Special Agent Jon Turbett of the Iowa Division of Criminal Investigation.  Early on in this questioning, Sauser brought up Terry's ex-wife, Bonnie, who was the source of many of their arguments.  Sauser told Agent Turbett that she "got very upset because [Terry] called [Bonnie], and he talked to her like he was married to her. . . .  And . . . that's what leads us to this day."[1]

---

[1] Agent Turbett's questioning of Sauser was recorded on video and audio, and video clips of the questioning were submitted into evidence at trial.  At the parties'

After questioning, Sauser was arrested and charged with murder. She proceeded to a jury trial in May 2021.[2] At the trial, the district court instructed the jury on murder in the first degree and several lesser offenses, but the court refused Sauser's request for an instruction on voluntary manslaughter. Sauser challenges this refusal on appeal.

## II.     Analysis

"A district court's refusal to submit a requested jury instruction is reviewed for correction of errors at law." *State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013). "Lesser offenses must be submitted to the jury as included within the charged offense if but only if they meet both the appropriate legal and factual tests." *Id.* (citation omitted). Voluntary manslaughter meets the legal test as a lesser-included offense of murder in the first degree. *Id.* The factual test is met if the defendant provided a factual basis showing "substantial evidence of each necessary element of the lesser-included offense." *Id.* at 477 (citation omitted).

Voluntary manslaughter occurs when a

person causes the death of another person, under circumstances which would otherwise be murder, if the person causing the death acts solely as the result of sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a person and there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain control and suppress the impulse to kill.

---

request, the court provided unofficial transcripts of the clips to the jury to assist them in following along with the video. Sauser's statements in this opinion are copied from the unofficial transcripts, which we verified were an accurate rendition of the video clips by viewing the clips themselves.

[2] Sauser initially pleaded guilty to kidnapping in the second degree, voluntary manslaughter, and going armed with intent. *Sauser v. State*, 928 N.W.2d 816, 818 (Iowa 2019). On postconviction-review, our supreme court found insufficient evidence to support the kidnapping conviction and remanded for further proceedings. *Id.* at 820–21.

Iowa Code § 707.4 (2011). Section 707.4 contains both subjective and objective requirements to convict for voluntary manslaughter. *Thompson*, 836 N.W.2d at 477.

> The subjective requirement of section 707.4 is that the defendant must act solely as a result of sudden, violent, and irresistible passion. The sudden, violent, and irresistible passion must result from serious provocation sufficient to excite such passion in a reasonable person. This is an objective requirement. It is also necessary, as a final objective requirement, that there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain his or her control and suppress the impulse to kill.

*Id.* (quoting *State v. Inger*, 292 N.W.2d 119, 122 (Iowa 1980)). The district court rejected the voluntary-manslaughter instruction, finding there was no "basis to say factually there was a sudden, violent, and irresistible passion resulting from serious provocation." We agree.

During the hours of questioning by Agent Turbett, Sauser provided several, sometimes conflicting accounts of the events just before the shooting. Those accounts coalesced into what Agent Turbett testified were "three broad stories" about that night.

In the first story, Sauser continued with the version she started in her 911 call. She described coming home from a trip to Illinois and finding a candle on the counter and a bottle of wine in the fridge. Sauser said that she went to the convenience store she and Terry owned to ask him about these items. She stayed at the store with Terry for about "two, two and a half hours" before they went back to their house to continue the argument. Once there, Sauser sat on a futon in the living room. Terry got a drink and sat down next to her. At some point, Sauser got

a gun from a drawer underneath the futon and placed it on her lap under a blanket because she said Terry would get "belligerent" when he drank. Sauser continued:

> And he was sitting there drinking his third, finishing his third drink. Smoking a cigarette. And I proceeded to get up. . . .
>
>> . . . .
>> The gun is in my hand. And I told him, I said I [unintelligible]. He says no, you're not leaving. And I'm halfway up. And he takes his hand. And he goes like this with the gun. . . .
>>
>>> . . . .
>>> And when he went like that, the trigger went off.
>>>
>>>> . . . .
>>>> I didn't. I don't know [if his] hand hit the trigger, if my hand hit the trigger.

In the telling of this first story, Sauser repeatedly said the shooting was an accident. And that was a theme of her defense at trial, where her attorney argued in closing: "She's not a murderer. This was an accident. She loved him." But if the shooting was accidental, as Sauser claimed, her actions could not have been the "result of sudden, violent, and irresistible passion." *Id.*

In the second story, Sauser described a double-suicide pact that she abandoned after shooting Terry at his urging:

> We both talked about double suicide. . . . And I will tell you why. One . . . . We're so far in debt . . . .
>
>> . . . .
>> . . . . [Two.] He said he's lived a good life, and he told me he had [Lou Gehrig's] disease. . . . I said I'll shoot myself first. Then you shoot me. And he said no. . . .
>>
>>> . . . .
>>> He wouldn't let me [shoot myself first]. He wanted me to shoot him first. He's like you shoot me. He says I lived a happy life. He says you're young. He said he had [Lou Gehrig's] disease.

This second story cannot support a voluntary manslaughter conviction because Sauser claims she shot Terry at his request. Again, this is not a result of "sudden, violent, and irresistible passion." *See id.*

In the third story, Sauser said the shooting was her "breaking point," though it is unclear from the record what exactly "broke" Sauser and triggered the shooting. Agent Turbett suggested to Sauser that it was because she was "play[ing] second fiddle to" Bonnie. Sauser agreed, saying: "That's the whys. . . . My anger just, I had so much anger going on." Yet the evidence at trial showed Sauser's anger was not "sudden." *See id.* Instead, she had long been jealous of Terry's contact with Bonnie, texting one of their employees: "I don't care if they [t]alk but don't lie about it this has been going on for too[] long and im not taking it no more." *See State v. Wadsworth*, No. 19-0698, 2020 WL 2487618, at *2 (Iowa Ct. App. May 13, 2020) (finding the defendant's "long-simmering anger" did not "establish a 'sudden' passion 'from serious provocation sufficient to excite such passion in a reasonable person'" (quoting *Thompson*, 836 N.W.2d at 477)).

Sauser's jealousy did increase in the weeks before the shooting, culminating with a call between Terry and Bonnie about their daughter's surgery. But Sauser found out about the call several hours before the shooting, thus giving her plenty of time to regain control. *Cf. State v. Thomas*, 151 N.W.2d 842, 843–44 (Iowa 1915) (stating homicide is not "extenuated to manslaughter" "[a]fter sufficient time elapses to allow the blood to cool"). Indeed, Sauser said that she sat next to Terry with the gun in her lap for "fifteen, twenty, twenty-five minutes" before the shooting. While they were arguing, she texted a friend that she had been staying with: "Ill be home Monday nig[h]t [i]f I can get out Lol got my gun loaded he better leave me alone Ill shoot." These facts do not show Sauser acted solely as a result of "sudden, violent, and irresistible passion." *See Thompson*, 836 N.W.2d at 477.

In her brief to us, Sauser glosses over the differences in her three stories, focusing instead on her argument with Terry and his refusal to let her leave the house as sufficient provocation. But her argument with Terry, as Sauser described it, does not rise to a level of provocation that would support a voluntary-manslaughter instruction. *See id.* at 478 (finding the decedent's "actions in slapping [the defendant] and insulting him with obscene gestures fell short of the objectively serious provocation required to submit a voluntary manslaughter instruction"). When Agent Turbett asked Sauser to rate her anger that night on a scale of one to ten, she placed it at "between three and half and four. . . . I'm not gonna say it's a ten. It was three and four, I was angry because he was keeping me against my will." *Cf. State v. Holder*, 20 N.W.2d 909, 914 (Iowa 1945) (stating that "if the homicide was effected with a deadly weapon 'the provocation must be great, indeed, to lower the offense from murder to manslaughter'" (citation omitted)). And while Sauser told Agent Turbett that Terry was abusive to her in the past, there was no evidence he physically harmed her before the shooting. *Cf. Inger*, 292 N.W.2d at 122 (finding "[t]he jury could have believed there was serious provocation from an assault" that occurred just before the killing).

Because none of Sauser's stories about the events leading up to the shooting support a finding that she acted solely out of the required level of provocation, the district court did not err in refusing to instruct the jury on voluntary manslaughter. *See Thompson*, 836 N.W.2d at 478. Therefore, we affirm her conviction.

**AFFIRMED.**

Vaitheswaran, P.J., concurs; Tabor, J., concurs specially.

**TABOR, Judge** (specially concurring).

Like the majority, I would affirm Sauser's conviction. But I would take a different route to that resolution.

In my view, the district court should have instructed the jury on the lesser-included offense of voluntary manslaughter. Sauser was entitled to that instruction if there was "sufficient evidence on each element of the offense to raise a factual issue" under Iowa Code section 707.4(1). *See State v. Royer*, 436 N.W.2d 637, 643 (Iowa 1989). The majority agrees with the district court that insufficient evidence supported the element that Sauser acted solely as the result of "sudden, violent, and irresistible passion resulting from serious provocation."

Yet even the prosecution, earlier in the case, believed that the evidence supported a factual basis for voluntary manslaughter. Originally, the State charged Sauser with first-degree murder. But when the State negotiated a guilty plea, it amended the trial information to charge Sauser with voluntary manslaughter— along with kidnapping in the second degree and going armed with intent.[3]

These exchanges occurred at the plea hearing:

> THE COURT: During the argument the two of you had, you intentionally shot and killed Terry Sauser as a result of a sudden, irresistible passion which was a result of a serious provocation. Is that correct? A.: Yes.
> . . . .
> Q.: Okay. Would you also agree that you did not have any time to regain control from the time that the provocation occurred to the time that you shot Mr. Sauser? A.: Yes.

---

[3] It is unethical for a prosecutor "to enter into a plea agreement under which [the] prosecutor files charges that are not supported by underlying facts." *Iowa S. Ct. Atty. Disc. Bd. v. Howe*, 706 N.W.2d 360, 370 (Iowa 2005) (discussing Iowa Ethics Opinion No. 87–13).

The State confirmed for the plea-taking court that it did not wish for any further colloquy on the voluntary manslaughter offense and there was no reason why the court could not accept Sauser's guilty pleas. The court found a factual basis for the pleas.

In postconviction-relief proceedings, Sauser challenged only the factual basis for her kidnapping plea. Our supreme court agreed with Sauser that "there was insufficient evidence to trigger a conviction for kidnapping in this case." *Sauser v. State*, 928 N.W.2d 816, 820 (Iowa 2019). The supreme court's decision did not discuss the factual basis for the voluntary manslaughter conviction.

On remand, the State reinstated the first-degree murder charge. The State proceeded to trial on substantially the same evidence as it marshalled before the appeal. Yet at trial, the prosecution did an about face, arguing the record now lacked a "factual basis" for instructing the jury on voluntary manslaughter.

In advocating for the instruction, the defense acknowledged that Sauser presented "alternate theories" to Agent Turbett about what happened in that house. But counsel emphasized one of those theories was that Terry "would get belligerent" when he'd been drinking. And after his third drink that night, "a struggle" occurred on the couch before the shooting. Indeed, more than once, Sauser told Agent Turbett that Terry would not let her leave, he "kept coming towards" her, and she was scared. Like the defense, I believe that alternative theory was enough to meet the factual test for an instruction on the lesser-included offense of voluntary manslaughter.

True, in *State v. Thompson*, the court held that the victim's acts of slapping the defendant in their bedroom, then retreating downstairs, running outside, locking herself in a car in the driveway, and "flipping him off" were not sufficient provocation. 836 N.W.2d at 475-76. By contrast, none of Sauser's versions features that kind of separation of the parties before the shooting. Rather, this case is more like *State v. Inger*, where harsh words and mutual combat generated a jury question on voluntary manslaughter. 292 N.W.2d at 122; *see also State v. Kinzenbaw*, 344 N.W.2d 258, 260 (Iowa Ct. App. 1983) (finding facts generated a jury question whether killing was done intentionally because of passion resulting from serious provocation when parties had a "volatile relationship" and had been arguing before the shooting). The court erred in not instructing on voluntary manslaughter.

Still, this instructional error is not cause for reversal. Because the jury received verdict forms for first- and second-degree murder, and returned a guilty verdict on the higher charge, "there is no prejudice for failure to instruct on manslaughter." *See State v. Nowlin*, 244 N.W.2d 591, 596 (Iowa 1976).