# IN THE COURT OF APPEALS OF IOWA

No. 22-1772
Filed August 30, 2023

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**DERRICK COOK MAYNARD,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Louisa County, Clinton Boddicker, District Associate Judge.

A defendant appeals his conviction for voluntary manslaughter. **AFFIRMED.**

Raya Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

Derrick Maynard appeals his conviction for voluntary manslaughter, arguing insufficient evidence exists to support his conviction. We conclude the verdict is supported by substantial evidence and affirm.

### I.     Background Facts & Proceedings

The following evidence was presented to a Louisa County jury. Maynard and his long-time girlfriend, Megan Reid, had a tumultuous relationship. They had two children, the youngest not yet one year old. Some of the conflict in their relationship stemmed from Reid's relationship with Steven Scotten, an individual whom Maynard referred to as Reid's drug dealer. Maynard believed that Scotten and Reid used methamphetamine together.

A text from Maynard to Reid's mother on March 16, 2020, read:

> I need megan (sic) to move out I have security cameras she is till (sic) having steve (sic) over doing meth staying up all night I have them on camera at 4 in the morning she has no respect for me and I will not let this go on any longer.

The day after, March 17, Maynard sent another text related to Reid and Scotten to Reid's mother:

> I already have a no contact order and trespassing against Steve cuz (sic) shes (sic) always bring meth to megan (sic) while I'm at work but if he comes here im (sic) gonna get a charge cuz (sic) I dont (sic) think I can look at him without stabbing him to death even tho (sic) its (sic) Megan's fault.

Maynard operated a moving business. On May 18, he was hired to transport a twenty-six-foot U-Haul loaded with furniture from Fairfield to Michigan. As part of this job, he secured the help of Gabriel Jaquez; Maynard and Jaquez left Fairfield together in the U-Haul as scheduled. Reid and the children were at

home when Maynard left for Fairfield. Reid was to bring the children to Maynard's grandmother's home before heading to work in Muscatine that same day.

Jaquez fell asleep in the U-Haul after leaving Fairfield. Maynard stopped at Reid's place of employment in Muscatine. According to Maynard, he had forgotten his overnight bag at home and called Reid to see if she could give him their shared house keys once she got to work. When he reached her, he learned she was still in Fairfield. He tried to check her location on his cell phone but was unable to do so. Maynard believed she had turned her location off on her cell phone. Maynard had expected her to drop their two children off at his grandmother's home and then drive straight to work. Reid's departure from that plan agitated Maynard. He turned around and headed back toward Fairfield.

On his way to Fairfield, Maynard met Reid driving in the opposite direction in her vehicle with Scotten in the passenger seat. Reid had to swerve to avoid a head-on collision. Maynard turned to follow them, accelerating until the U-Haul reached seventy-four miles-per-hour. Jaquez was awakened by Maynard who was "getting super mad, yelling, and freaking out." He also heard Maynard scream into the phone, "you lying whore, stupid bitch, I want my keys back," and "I bet it's that Steve guy." Both vehicles reached Columbus Junction, with Maynard closing in behind Reid. Maynard floored the U-Haul as it traveled up an incline and was yelling on the phone with Reid. Reid tried to turn around. Maynard, without hitting the breaks or swerving, fastened his seat belt and remarked, "I have insurance on this bitch." The U-Haul slammed into Reid's vehicle. And Maynard kept his foot on the accelerator after the collision, pushing Reid's vehicle further down the road. After coming to a rest, Maynard asked Jaquez for a knife. Jaquez did not respond.

But Maynard exited the U-Haul and aggressively approached Scotten, who had collapsed on the ground outside of Reid's car. Maynard stopped just short of Scotten and called 911. Reid died from her injuries the next day.

Maynard was arrested and charged with murder in the second degree. Following trial in August 2022, the jury found Maynard guilty of a lesser included offense of voluntary manslaughter. He was sentenced to a term of imprisonment not to exceed ten years. Maynard now appeals.

## II. Standard of Review

We review sufficiency claims for correction of legal error. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We consider whether, when taken in the light most favorable to the State, the verdicts are supported by substantial evidence. *Id.* Evidence is substantial if it would convince a rational trier of fact of guilt beyond a reasonable doubt. *See id.* This standard means that evidence must do more than raise "suspicion, speculation, or conjecture" to a reasonable jury. *State v. Leckington*, 713 N.W.2d 218, 221 (Iowa 2006).

## III. Sufficiency of the Evidence

Maynard's sole claim on appeal is that the State failed to offer substantial evidence to support his conviction for voluntary manslaughter. He alleges that the evidence was not sufficient to show that he intentionally hit Reid's vehicle or that his action "resulted solely by reason of sudden, violent, and irresistible passion resulting from serious provocation."

We first address Maynard's contention that there was not sufficient evidence presented to show he acted intentionally in crashing the U-Haul into Reid's vehicle. Voluntary manslaughter is an "intentional killing," not in "the sense

that a specific intent to kill must be admitted or established," but meaning only that "that the [a]ct which resulted in death is intentionally committed." *State v. Ceretti*, 871 N.W.2d 88, 93 (Iowa 2015) (alteration in original) (citation omitted). Maynard contends that he did not intend to strike Reid's vehicle, that he did not see her car as he ascended the hill in Columbus Junction until it was too late, and the collision that resulted was accidental. The trial record belies those claims. We determine the State presented substantial evidence that could convince a rational trier of fact of Maynard's guilt beyond a reasonable doubt.

Maynard's passenger, Jaquez, testified he could see Reid's vehicle up ahead before impact, and that Maynard made no attempt to prevent the collision. He also stated Maynard yelled into his phone right before striking Reid's vehicle, "I have insurance on this bitch." Reid's passenger, Scotten, testified that shortly before the wreck Reid had to swerve out of the way of Maynard's U-Haul to prevent a head-on collision. And a special agent for the Division of Criminal Investigation offered testimony about his inquiry, including a re-creation of the crash. That re-creation demonstrated that a person driving toward the scene of the collision would likely have been able to see Reid's vehicle making a U-turn. We determine that there is sufficient evidence in the record to conclude that Maynard intentionally struck Reid's vehicle.

Maynard also asserts there is not sufficient evidence to show he acted solely by reason of "sudden, violent, and irresistible passion resulting from serious provocation." To be convicted of voluntary manslaughter "the defendant must act solely as a result of sudden, violent, and irresistible passion. The sudden, violent, and irresistible passion must result from serious provocation sufficient to excite

such passion in a reasonable person." *State v. Inger*, 292 N.W.2d 119, 122 (Iowa 1980). It is also necessary "that there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain his or her control and suppress the impulse to kill." *Id.*

Maynard testified in his own defense, indicating that he was worried Reid would be unable to care for their children if she was using drugs, and he believed if she was with Scotten, that meant she was using drugs. He was concerned he would have to cancel the moving job to take care of their children because of Reid's behavior. Jaquez testified that shortly before the crash he woke up to Maynard "freaking out because he just saw Megan with Steve," and that Maynard was "getting super mad, yelling, and freaking out." The trier of fact found sufficient evidence that Maynard was motivated by a sudden, violent, and irresistible passion which resulted from a serious provocation.

Maynard argues that there was time for him to regain control between initially seeing Reid with Scotten and the collision. Yet Jaquez testified that Maynard and Reid were yelling on the phone at each other until the moment of impact. A rational trier of fact could have found that there was sufficient evidence to establish that a reasonable person in Maynard's situation would not have regained control. We conclude that there is sufficient evidence in the record that Maynard was motivated by a sudden, violent, and irresistible passion that resulted from a serious provocation when he crashed the U-Haul into Reid's vehicle.

But even if there were not sufficient evidence of provocation, the error would not be reversible as it worked to Maynard's benefit. "'A person commits voluntary manslaughter when that person causes the death of another person, under

circumstances which would otherwise be murder' if it were not for the existence of provocation." *State v. Taylor*, 452 N.W.2d 605, 606–07 (Iowa 1990) (quoting Iowa Code § 707.4 (2020)). The *Taylor* court stated:

> Voluntary manslaughter is usually defined as an intentional killing, done without premeditation or deliberation, and without malice. The element of malice, which is a necessary component of second degree murder, is usually negatived in the voluntary manslaughter context by either heat of passion suddenly aroused upon adequate provocation or by the situation where the defendant has an imperfect right of self-defense.

*Id.*

The evidence was adequate to convict Maynard of second-degree murder in the absence of provocation, having determined that Maynard intentionally drove the U-Haul into Reid's vehicle, fastening his seatbelt before accelerating. And Reid died as a result. The elements required to convict Maynard of second-degree murder necessarily include the elements of manslaughter. *See State v. Williams,* 525 N.W.2d 847, 851 (Iowa 1994).

Our supreme court has found that when a court erroneously finds provocation where it should not have, the defendant is given a break to which they are not entitled, and that error is not reversible. *See Taylor* at 607. Consequently, Maynard cannot complain that provocation was found.

**AFFIRMED.**