## IN THE COURT OF APPEALS OF IOWA

No. 22-1280
Filed October 25, 2023

**STATE OF IOWA,**
  Plaintiff-Appellee,

**vs.**

**OSCAR CHAVEZ,**
  Defendant-Appellant.
_____

Appeal from the Iowa District Court for Story County, Jennifer Miller, Judge.

A defendant appeals his conviction for first-degree murder. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Aaron Rogers, Assistant Attorney General, for appellee.

Heard by Greer, P.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

Ever since learning about HIV[1] in high school, Oscar Chavez has feared contracting it. So when his new paramour, Jean,[2] told him she had HIV after they had unprotected intercourse, he became incensed. Realizing she misspoke, Jean corrected herself and clarified she actually had HPV not HIV.[3] Chavez refused to believe Jean did not have HIV despite her clarifications. He believed he now had HIV and sought vengeance. Chavez carried out a vicious and prolonged attack on Jean culminating in her death—he beat her with a twenty-pound weight, punched her so hard he broke his finger, kicked her in the back with enough force to cause her to defecate, and shot her six times. The State charged Chavez with first-degree murder for the killing.

At the jury trial, Chavez sought to introduce expert testimony regarding obsessive-compulsive disorder. The district court did not permit the testimony because Chavez had never been evaluated for or diagnosed with obsessive-compulsive disorder. Chavez also requested a jury instruction for voluntary manslaughter as a lesser-included offense. The court declined to give the voluntary manslaughter instruction, and the jury found Chavez guilty as charged.

Chavez appeals. He challenges the court's refusal to (1) submit a voluntary

---

[1] HIV stands for human immunodeficiency virus. *About HIV*, Centers for Disease Control and Prevention, https://www.cdc.gov/hiv/basics/whatishiv.html (last visited Oct. 16, 2023).

[2] Jean is not the victim's name. We selected the name Jean using a random-name generator to preserve her privacy.

[3] HPV stands for human papillomavirus. *Genital HPV Infection—Basic Fact Sheet*, Centers for Disease Control and Prevention, https://www.cdc.gov/std/hpv/stdfact-hpv.htm (last visited Oct. 16, 2023). HPV and HIV are two different sexually transmitted infections. *Id.* Subsequent testing confirmed Jean had HPV not HIV.

manslaughter instruction to the jury and (2) permit the expert testimony on obsessive-compulsive disorder.

We start with Chavez's claim that the district court should have instructed the jury on voluntary manslaughter. We review challenges to jury instructions for legal error. *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016). "Lesser offenses must be submitted to the jury as included within the charged offense if but only if they meet both the appropriate legal and factual tests." *State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013) (quoting *State v. Ware*, 338 N.W.2d 707, 714 (Iowa 1983)). Iowa Code section 707.4(3) (2021) explicitly states that "[v]oluntary manslaughter is an included offense [of] murder in the first . . . degree," so the legal test is satisfied. The issue then hinges on whether the factual test was satisfied. "Determining whether a lesser included offense meets the factual test involves an ad hoc determination whether there is a factual basis in the record for submitting the included offense to the jury." *Thompson*, 836 N.W.2d at 477 (citation and internal quotation marks omitted). There is a factual basis when "the defendant has produced 'substantial evidence of each necessary element of the lesser-included offense[ ].'" *Id.* (alteration in original) (citation omitted).

> A person commits voluntary manslaughter when that person causes the death of another person, under circumstances which would otherwise be murder, if the person causing the death acts solely as the result of sudden, violent, and irresistible passion resulting from *serious provocation* sufficient to excite such passion in a person and there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain control and suppress the impulse to kill.

Iowa Code § 707.4(1) (emphasis added). We focus on the serious provocation element. "Provocation is the linchpin of the crime of voluntary manslaughter."

*State v. Ambrose*, 861 N.W.2d 550, 558 (Iowa 2015). Here, the only potential event identified by Chavez to serve as serious provocation is Jean's initial misstatement that she had HIV, which she later corrected. But our supreme court has long held that words alone, no matter how offensive or insulting, are insufficient to amount to serious provocation as a matter of law. *See, e.g.*, *Thompson*, 836 N.W.2d at 478; *State v. Rutledge*, 47 N.W.2d 251, 259 (Iowa 1951). As a result, Chavez cannot satisfy the factual test necessary to submit voluntary manslaughter as a lesser-included offense in this case.

Chavez concedes this and asks us to expand the potential factual basis for serious provocation to include words that convey information. He points to other jurisdictions that have done so. But our supreme court has declined to expand the doctrine in the manner Chavez suggests. *See Thompson*, 836 N.W.2d at 478 (recognizing some other jurisdictions had held words conveying information could provide a sufficient basis for serious provocation without broadening serious provocation under Iowa law in that manner). And such a significant expansion of serious provocation is better left to our supreme court. *Cf. Luana Sav. Bank v. Pro-Build Holdings, Inc.*, 856 N.W.2d 892, 893 (Iowa 2014) (recognizing this court appropriately deferred to the supreme court to decide whether to expand a doctrine); *see also State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014) ("We are not at liberty to overrule controlling supreme court precedent."). As it is not for this court to expand the concept of serious provocation beyond that already delineated by our supreme court, we reject Chavez's request to expand the potential factual basis for serious provocation.

Even if we could conclude words conveying information could constitute serious provocation, the facts of this case are insufficient to support a finding of serious provocation. Voluntary manslaughter includes one subjective and two objective parts. *See Thompson*, 836 N.W.2d at 477. The subjective part "is that the defendant must act solely as a result of sudden, violent, and irresistible passion." *Id.* (quoting *State v. Inger*, 292 N.W.2d 119, 122 (Iowa 1980)). The first objective part requires that the defendant's "sudden, violent, and irresistible passion must result from serious provocation sufficient to excite such passion in a reasonable person."[4] *Id.* The second objective part requires "that there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain his or her control and suppress the impulse to kill." *Id.*

Here, the claimed provocation failed to generate a jury question on the first objective part of voluntary manslaughter. As a matter of law, Jean stating she had HIV and then clarifying she actually had HPV would not trigger a sudden, violent, and irresistible passion in a reasonable person. *See Inger*, 292 N.W.2d at 122. So, even if we could expand the potential factual basis for serious provocation to include words conveying information, these words would not provide a sufficient factual basis for serious provocation.

---

[4] Chavez contends the applicable standard should be how a "reasonable person in Chavez's shoes—meaning a person who had an extreme fear of HIV for over a decade, and who had repeatedly questioned his sexual partner about her sexual health—would" react. But that would effectively negate the reasonable person standard by injecting an individual person's extreme point of view into the calculus.

Ultimately, we conclude the district court correctly determined Chavez did not provide a sufficient factual basis for serious provocation, as words alone cannot provide a sufficient basis for serious provocation. So Chavez did not satisfy the factual test necessary to submit the voluntary manslaughter instruction to the jury, and the district court correctly rejected the proposed instruction.

Next, we consider Chavez's challenge to the district court's refusal to admit expert testimony regarding obsessive-compulsive disorder. We review evidentiary challenges for an abuse of discretion, our most deferential standard. *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015). "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001) (citation omitted).

The court expressed its reservations about permitting the expert testimony regarding obsessive-compulsive disorder, explaining:

> it would be helpful to the trier of fact had there been a diagnosis of OCD by the defendant or of the defendant. I feel like what you're essentially trying to do is have the jury diagnosis him with OCD based on the facts that are in the record, and I—I don't think that that's the jury's job. I don't think they have the expertise to do that, and I think that that sort of testimony is more confusing than it is probative.

After reviewing a deposition of the expert witness, the court ultimately ruled:

> [The expert] has not evaluated Mr. Chavez. There's not been any evidence on the record that he has been diagnosed by a licensed physician or a psychologist with obsessive-compulsive disorder. [The expert] is certainly a qualified expert who could testify about such things, but the court fails to see how in this particular situation any of that testimony would be relevant given that there's been no evidence that the defendant, in fact, has OCD.
> Even if that evidence is relevant, the court believes that the probative value, if any, of that testimony would be substantially

> outweighed by the risk of confusing and misleading the jury, and as the court stated earlier, I believe that the defense would ask—would essentially be asking the jurors to diagnose Mr. Chavez based on how he acted in this particular situation, and is certainly not within the purview of the jury, and inappropriate for the jury to do that.
>
> So accordingly the court finds that that testimony of [the expert] will not be admitted today for that purpose.

Chavez claims the court improperly excluded the expert testimony on obsessive-compulsive disorder because it would provide insight to his state of mind, which was a relevant consideration for the charge of murder in the first degree and the lesser-included offense of second-degree murder. Chavez's claim only holds water if there is any evidence Chavez suffers from obsessive-compulsive disorder. But, as the court noted in its ruling, the record did not establish Chavez suffers from obsessive-compulsive disorder. Without any evidence that Chavez had obsessive-compulsive disorder, expert testimony about the disorder would not provide any insight on his state of mind or any other issue in this particular case. See Iowa R. Evid. 5.702 (permitting expert testimony "if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence to determine a fact in issue").

Chavez takes issue with the district court's concern that the testimony would confuse the jury and essentially require the jury to reach a diagnosis for him before it could consider the testimony. He suggests this is in error because the State is regularly permitted to present similar expert testimony explaining things like the dynamics of domestic violence, *see State v. Newell*, 710 N.W.2d 6, 28–29 (Iowa 2006); *State v. Rodriquez*, 636 N.W.2d 234, 245–46 (Iowa 2001), or post-traumatic stress-disorder symptoms commonly experienced by survivors of sexual abuse, *see State v. Gettier*, 438 N.W.2d 1, 4–6 (Iowa 1989), without corresponding expert

testimony that the underlying domestic violence or sexual abuse occurred. So, he reasons, juries are often left to make threshold determinations of fact before considering expert testimony.

First, we note the district court said nothing to suggest it was applying different standards to the proposed testimony because it was offered by a defendant rather than the State. Chavez's suggestion otherwise is without merit. Second, the cases highlighted by Chavez differ significantly from his. The expert testimony in *Newell*, *Rodriquez*, and *Gettier* was presented to explain the victims' otherwise unusual response to a traumatic event, and there was corresponding, separate evidence presented to establish the domestic violence or sexual abuse, making the expert testimony relevant. Conversely, as previously noted, Chavez presented no evidence he had obsessive-compulsive disorder to accompany the expert testimony on the disorder. Third, a jury's determination of whether past events occurred, such as instances of domestic violence or sexual abuse, differs significantly from expecting a jury to consider testimony about symptoms of a medical condition and reach a determination as to whether a defendant has that medical condition. So *Newell*, *Rodriquez*, and *Gettier* are not instructive here.

Instead, we find the district court's logic sound. Because the record was devoid of any evidence Chavez has obsessive-compulsive disorder, the testimony was not relevant. *See* Iowa R. Evid. 5.401. We agree with the district court that, even if the evidence was in any way relevant, it was of little to no probative value and likely to confuse the issues or mislead the jury. The court did not abuse its discretion by excluding the evidence on this basis. *See* Iowa R. Evid. 5.403.

Finding no error in the district court's refusal to instruct the jury on voluntary manslaughter or abuse of discretion by the court when it excluded the expert testimony, we affirm.

**AFFIRMED.**